UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LINDA FANNIN,

        Plaintiff,

vs.                                    Case No. 8:05-CV-2303-T-27TBM

LEMCKO FLORIDA, INC.,
d/b/a/ SEVEN HILLS GOLFER'S
CLUB, A Florida Corp.,

        Defendant.
_____/

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**BEFORE THE COURT** is Defendant's Motion for Summary Judgment (Dkt. 25) and Plaintiff's Response in Opposition (Dkt. 26). Upon consideration, Defendant's Motion (Dkt. 25) is **GRANTED**.

### I. Introduction

Plaintiff brought this Title VII action against Defendant contending that during her employment with Defendant, she was sexually harassed by her supervisor and terminated after rejecting his advances. Plaintiff alleges claims of sexual harassment and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*(Counts I and III) and the Florida Civil Rights Act of 1992, §§ 760.01, *et seq.*, Fla. Stat. (1999)("FCRA")(Counts II and IV). Defendant moved for summary judgment on all claims.

## II. Factual Background

Plaintiff began working for Defendant in April 1999 as a snack bar attendant. (Plaintiff Depo. at 9, 11). In May 2002 Plaintiff was promoted to Food and Beverage Manager. (Id. at 15, 18, 31, 33). Plaintiff's job responsibilities as Food and Beverage Manager included hiring, training, taking disciplinary action against employees and ordering food and alcohol. (Id. at 33). Plaintiff's immediate supervisor during the relevant period was Jason Nelson. (Id. at 74).

Plaintiff alleges that from October 2004 through December 2004, Jim Kahanyshyn, Defendant's General Manager, subjected her to unwelcome harassment. (Dkt. 26 at ¶ 3). Specifically, Kahanyshyn told Plaintiff to hire young, single attractive women with no children that he could go out with. (Plaintiff Depo. at 78-79). Kahanyshyn called Plaintiff on one occasion in the evening and invited her to his house. (Id. at 82, 84). Kahanyshyn asked Plaintiff to go out with him and to set other women up with him. (Id. at 86). On the day before Christmas 2004, Kahanyshyn asked Plaintiff if "we could spend time over the holidays." (Id. at 91). Plaintiff declined the invitation. (Id.)

On the Tuesday following Christmas, Plaintiff returned to work after being out four days. (Plaintiff Depo. at 73). Upon entering the kitchen, Plaintiff found Kahanyshyn upset over the condition of the kitchen. (Id. at 74). When Plaintiff inquired about the problem, Kahanyshyn told her that he was discussing it with Nelson. (Id.) Nelson motioned to Plaintiff not to worry about it. (Id.) Plaintiff waited on some customers and then returned to the kitchen. (Id.) Kahanyshyn was "going around saying that this was a mess and this was a mess and how it wasn't cleaned last night." (Id. at 74-75). Plaintiff suggested that they sit down and talk about it. (Id. at 75). Kahanyshyn responded, "I'm not f...ing talking to you. Am I talking to you? I'm not f...ing talking to you." (Id.

at 75). Plaintiff told Kahanyshyn that he needed to discuss whatever he was unhappy about with her as she was in charge of the kitchen. (Id. at 75). Kahanyshyn responded that he would not talk with her. (Id. at 76). Plaintiff replied, "[w]ell, if we can't sit down and talk about it, then I might as well give you my two-weeks' notice if we can't handle this like adults." (Id. at 76). Kahanyshyn "looked right at me and he says, 'I'm f...ing done talking you [sic] to. Get your f...cking sh.t and get the f... out.'" (Id. at 76). "That's when I punched out and I left." (Id. at 76). During this exchange, Kahanyshyn made no reference to any of the allegedly harassing activities. (Id. at 104).

When asked on cross examination whether Plaintiff tendered her resignation, Plaintiff testified, "[w]hen I asked him to sit down and talk about it, okay, and he bluntly refused at that time, I had no other choice. I mean, I felt like my back was up against the wall." (Id. at 109). "I said, '[w]ell, then I guess I'll have to give my two-weeks' notice.' If you have someone who's not willing to discuss anything with you or talk to you, okay, and this is your responsibility, I felt that I had no way but to give my notice." (Id.)

### III. Standards Applicable to Summary Judgment

Summary judgment is proper if following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56. "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004) (*internal citations omitted*). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* at 1260. The Court must view all evidence and all factual inferences reasonably drawn

from the evidence in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1280 (11th Cir. 2004).

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. Plaintiff's evidence must be significantly probative to support the claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The Court will not weigh the evidence or make findings of fact. *Anderson*, 477 U.S. at 249; *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003). Rather, the Court's role is limited to deciding whether there is sufficient evidence upon which a reasonable juror could find for the non-moving party. *Id.*

## IV. Discussion

While Title VII's prohibition against sex discrimination includes sexual harassment, Title VII is not a federal "civility code." *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998). To prove a sexual harassment claim under Title VII,[1] a plaintiff must show that (1) she belongs to a protected group; (2) she was subjected to unwelcome sexual harassment; (3) the harassment was based on her sex; (4) the harassment altered the terms and conditions of her employment; (5) there is a basis for holding the employer vicariously liable. *Arnold v. Tuskegee University*, 2006 WL 3724152 at *2 (11th Cir. Dec. 19, 2006). Defendant challenges only Plaintiff's ability to meet the fourth and fifth prongs.

---

[1] Plaintiff's Title VII and FCRA claims are analyzed using Title VII standards. *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998).

When the sexual harassment complained of is perpetrated by a supervisor, an employee may rely on one of two theories to establish the fourth and fifth prongs of a Title VII action. The employee may rely on either the "tangible employment action" theory or the "no tangible employment action" theory. *Arnold v. Tuskegee University, supra*.[2] Here, Plaintiff relies on the "adverse tangible employment" theory, conceding that Kahanyshyn's conduct was not sufficiently severe or pervasive to support a "no tangible employment action." (Dkt. 26 at 2, n.1, 9). Accordingly, it is unnecessary to address whether Kahanyshyn's harassment was sufficiently severe or pervasive to have altered the terms and conditions of Plaintiff's employment. *See Cotton*, 434 F.3d at 1231.

To prevail on her Title VII claim for sexual harassment, Plaintiff "must prove that the harassment culminated in a 'tangible employment action.'" *Cotton v. Cracker Barrel Old Country Store, Inc.*, 434 F.3d 1227, 1231 (11th Cir. 2006)(citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 753-54 (1998)); *Pipkins v. City of Temple Terrace*, 267 F.3d 1197, 1200 (11th Cir. 2001). An "adverse tangible employment action" constitutes a serious and material change in the terms, conditions, or privileges of employment. *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001). *See Frederick v. Sprint/United Mgmt. Co.*, 246 F.3d 1305, 1311 (11th Cir. 2001); *see also Johnson v. Booker T. Washington Broad. Serv., Inc.*, 234 F.3d 501, 512 (11th Cir. 2000). When a supervisor "engages in harassment which results in an adverse 'tangible employment action' against the employee, the employer is vicariously liable for the harassment." *Ellerth*, 524 U.S. at 763; *Faragher v. City of Boca Raton*, 524 U.S. 775, 790 (1998).

---

[2] Claims brought under these two theories were formerly known as *quid pro quo* and hostile work environment claims, with tangible employment action resulting in *quid pro quo* harassment. *See Frederick v. Sprint/United Mgmt. Co.*, 246 F.3d 1305, 1311 (11th Cir. 2001) (recognizing shift in terminology); *Johnson v. Booker T. Washington Broad. Serv., Inc.*, 234 F.3d 501, 508 (11th Cir.2000) (same).

### Plaintiff's Adverse Tangible Employment Action Claim

Defendant is liable for Kahanyshyn's conduct if Kahanyshyn took a tangible employment action against Plaintiff as a result of Plaintiff's refusal to submit to Kahanyshyn's sexual advances. *See Taylor v. CSX Transp.*, 418 F. Supp. 2d 1284, 1296 (M.D. Ala. 2006). When a harassing supervisor effects an adverse employment action, an inference arises that there is a causal connection between the decision and the refusal by the employee to submit to the sexual demands. *See Llampallas v. Mini-Circuits, Lab, Inc.*, 163 F.3d 1236,1247 (11th Cir. 1998).

A termination constitutes an adverse employment action. *Gupta v. Florida Bd. Regents*, 212 F.3d 571, 587 (11th Cir. 2000). Plaintiff contends that she was fired by Kahanyshyn. Defendant contends that Plaintiff resigned and that Plaintiff cannot, therefore, establish that she suffered an adverse employment action. Accordingly, the Court must determine whether, considering the evidence in the light most favorable to Plaintiff, a reasonable jury could find that Kahanyshyn terminated Plaintiff.[3]

The parties rely exclusively on Plaintiff's deposition testimony in support of their respective contentions. As noted, Plaintiff testified that when Kahanyshyn refused to discuss the messy kitchen with her, she told him, "if we can't sit down and talk about it, then I might as well give you my two-weeks' notice if we can't handle this like adults." (Plaintiff Depo. at 76). Plaintiff argues that this was not a resignation and that at the very least, a material issue of fact exists as to whether Plaintiff resigned. (Dkt. 26 at 8)(emphasis omitted). Considering this portion of Plaintiff's testimony alone, Plaintiff's suggestion that a material issue of fact exists might be persuasive. However, on cross examination, Plaintiff effectively admitted that she tendered her resignation to Kahanyshyn. When

---

[3] Plaintiff does not allege that any other adverse employment actions were taken.

asked if she had tendered her resignation, Plaintiff testified: "[w]hen I asked him to sit down and talk about it, okay, and he bluntly refused at that time, I had no other choice. I mean, I felt like my back was up against the wall." (Id. at 109). "I said, '[w]ell, then I guess I'll have to give my two-weeks' notice.' If you have someone who's not willing to discuss anything with you or talk to you, okay, and this is your responsibility, I felt that I had no way but to give my notice." (Id.)

An employee who voluntarily resigns cannot claim that she suffered an adverse employment action under Title VII. *See Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 447 (6th Cir. 1999)(employee who voluntarily resigns cannot complain of having suffered an adverse employment action under the ADA or FMLA.). Moreover, an employee cannot claim that her employer's acceptance of her resignation constitutes an adverse employment action. *Curby v. Solutia, Inc.*, 351 F.3d 868, 872 (8th Cir. 2003). Here, it is undisputed that Kahanyshyn told Plaintiff to collect her belongings and leave only after Plaintiff told Kahanyshyn either "then I might as well give you my two-weeks' notice if we can't handle this like adults" or "[w]ell, then I guess I'll have to give my two-weeks' notice."

Considering the facts in the light most favorable to Plaintiff, at best she offered to resign and Kahanyshyn accepted her resignation. Given the undisputed facts of record, Kahanyshyn's acceptance of that offer cannot constitute an adverse employment action protected by Title VII. *Compare Boyd v. Province Healthcare Co. Inc.*, 2005 WL 3132394 at *5 (S.D. Ala. Nov. 22, 2005)(finding on plaintiff's ADA claim that a reasonable jury could find that the plaintiff was fired rather than resigned when the plaintiff's supervisor said "we've got to do what we've got to do" and

asked plaintiff to turn in his badge).[4]

While a reasonable jury could infer that Kahanyshyn's vulgar outbursts directed to Plaintiff may have been related to Plaintiff's refusal to submit to his advances, no reasonable jury could find that Kahanyshyn took an adverse employment action against her. At most, he accepted her tendered resignation, albeit with expletives. As Plaintiff has presented no other evidence of an adverse tangible employment action taken against her, Plaintiff cannot establish a prima facie case of sexual harassment. For this reason, summary judgment must be granted in favor of Defendant on Plaintiff's sexual harassment claims.

### Plaintiff's Retaliation Claim

In order to establish a prima facie case of retaliation under Title VII,[5] a plaintiff must prove (1) that she participated in activity protected by Title VII; (2) she suffered an adverse employment action; and (3) there is a causal connection between the participation in the protected activity and the adverse employment action. *Gupta*, 212 F.3d at 587. As discussed, Plaintiff has not established that she suffered an adverse employment action. Accordingly, summary judgment must also be granted in favor of Defendant on Plaintiff's retaliation claims.

### V. Conclusion

Defendant has met its burden of establishing the absence of any genuine issues of material fact on Plaintiff's sexual harassment and retaliation claims. Plaintiff has failed to designate specific

---

[4] Plaintiff does not argue that she was constructively discharged because her working conditions were so intolerable that she was compelled to resign. *See Fitz v. Pugmire Lincoln-Mercury, Inc.*, 348 F.3d 974, 977 (11th Cir. 2003). In any event, it is highly improbable that Plaintiff would be able to show that Kahanyshyn's *harassment* was "so intolerable that resignation was appropriate" as Plaintiff concedes that Kahanyshyn's behavior would not rise to the requisite level of severity and pervasiveness. *See Mitchell v. Pope*, 189 Fed. Appx. 911, 914 (11th Cir. 2006).

[5] Plaintiff's FCRA claims of retaliation are also analyzed using Title VII standards. *Harper*, 139 F.3d at 1387.

facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. Plaintiff's evidence supporting her claims is not significantly probative. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Accordingly, it is

**ORDERED AND ADJUDGED** that Defendant's Motion for Summary Judgment (Dkt. 25) is **GRANTED**. All other motions are denied as moot. The Clerk is directed to enter judgment in favor of Defendant and close this case. Jurisdiction is reserved to tax costs.

**DONE AND ORDERED** in chambers this 5th day of January, 2007.

**JAMES D. WHITTEMORE**
**United States District Judge**

Copies to:
Counsel of Record